218-0135 Cecilia Oliva v. Janella Baking Co. Good morning, gentlemen. Great to see you. May I please the court, counsel? Kurt Newman for Cecilia Oliva. I have a preliminary issue that should decide this case. We have the court turn to out-of-court evidence for its findings on credibility. The credibility findings determine the rulings on accident and causation, so they were material to the overall decision against... Wait, did you say out-of-court evidence? Pardon? Did you say something about out-of-court evidence? Yes, sir. So now you have piqued their curiosity. What's the out-of-court evidence? Well, the out-of-court evidence is the arbitrator's claimed observation of my client's utilizing a cane six months before our trial. She doesn't give any more detail than that. She gives a bullet point of reasons why she's ruling against credibility. That's one of the issues she identifies. And the curious point is that's the only personal observation she makes of my client at any time. Nothing from the trial. And that's in the record that she observed her with a cane. No, it's not in the trial proceeding record. But it is in her decision at page 1280, I believe, where I can find it for you. If you could, quickly. Absolutely. And it's attached as an appendix. It is C1280 with record. It's 810, appendix 10 of my holding brief. And it's the last holding point. And it says what? Could you read it there real briefly? Oh, yes. It says, the arbitrator announced that this matter was previously set for trial in the weekend of November 24, 2015. When it entered the trial, no witnesses were sworn in. Petitioner appeared at that hearing utilizing a cane. Observations of my client outside court. No one sworn in. No witnesses were taken. No evidence was taken. And the reason I think it's a pretty easy call for you, gentlemen, is the legislature thought it fit to include 1.18 in the statute for the workers' compact, which I've never had an occasion to use before. But 1.18 says, decisions from the commission shall be based exclusively on evidence within the record of the proceeding. This is not within the record of the proceeding. This is out of court evidence. So the decision — Let me ask you a question. Yes. If a case is not trial before a jury, and before a plaintiff takes the witness stand, the jury sees the plaintiff walk across the courtroom floor and claim that they had some back injury or something on the organ. And then when the trial starts, the plaintiff gets up from the counsel table and walks to the jury box without the use of the cane. Does the jury have the right to take into consideration what they observe? Sure they do. Sure? Why doesn't the arbitrator? Just because it happened on a different day? No, because we have an administrative system which is governed by the statutory provisions which enact and fuel. What's important about 1.18 is it has a second part to it. Not only don't you use out-of-court evidence, but any findings of fact made by the arbitrator or his decision on inquiries, investigations, examinations, and inspections undertaken by the arbitrator must be, shall be, entered into the record of proceedings. She did enter it into the record of proceedings in her decision. She said that she observed it. The record of proceedings, I would assume, would be the taking of evidence and the acceptance of evidence. Well, and if it was correct, then the arbitrator can't take into consideration demeanor on the stand. Well. Because they usually only put the demeanor into the decision. Here's why this is important. Must they turn around and say, I observed, and put it on the record, I observed the witness shift in his chair? Right. They have to do that? Well, by that time, the witness has been sworn in. Everything is formal. We're putting on evidence. Everybody's putting on evidence. But the record would not reveal whether he shifted in his chair. Well, six months before trial, no one's sworn in. No, but I want to see how far you want to take your interpretation of this code. Sure. The arbitrator isn't going to put on the stand what they saw in the demeanor. 1.1e requires the arbitrator to turn around. We're going to write an opinion that says every time an arbitrator relies on the demeanor of a witness during the course of a hearing, they must put on the record specifically what they saw. No, sir. The opinion I want you to write is one point where he means something. It's in the statute. I'm just trying to get out of you what it means. It means don't use out-of-court evidence. Wait a minute, wait a minute, wait a minute. She didn't observe him out of court. She turned around on your bullet point, and what did she say she observed? She said... The petitioner appeared at that hearing utilizing a cane. She said... It's not something she saw in the street. Appeared at that hearing utilizing a cane. Okay, so to take your point to a logical extension, she sees my client in the bathroom using a cane. The bathroom's a little different than seeing your client at a hearing. The hearings don't start until the people are sworn in and the state sheet is done. We were there for a pre-trial hearing. That's why I asked you the question about the jury seeing a plaintiff walk across the floor. Sure. Before trial, using a cane, and when they get up to take the witness stand, don't use a cane and walk to the... The second answer to the jury versus the commission situation is the jury's not issuing written decisions of fact or findings of fact. They're not governed by statutory provisions specifically addressing use without a court evidence. I'm just at a loss as to exactly how we would write an opinion based on your interpretation of that rule. Here's how you do it. All you do is say one point of view is in the statute. There's nothing inherently arbitrary or unconstitutional about it. It must have a meaning or apply it as written. This is out of court evidence. The case was clearly based on prior learning without a court evidence. It's remanded to the commission. And the ultimate finding, the moral of the story, and hopefully the public's decision is this means something. Don't use out of court evidence. In addition to the statute, the specific provision that really applies to my case, which is unusual, I have Supreme Court case law from 1989. Canada versus IC. Factual findings must be based on evidence from the record. What my client's doing six months before, before we do a trial, is not part of the record. Let me follow up on your argument. So if it gets remanded, directions for what? The directions are that a commission that is not, that hasn't been involved so far, because we need someone who's untainted, because the commission signed on to guarantee this decision. We just want a clean look at this. I'm not asking for a clean look at this. But you could end up in the same place theoretically. I could lose the case. Right. Of course. Of course. But the out of court evidence, the out of court evidence is gone. And the reason we need to do this is the patency, the sufficiency of this process. We have to make sure that people are given a fair shake. I may get a fair shake down low. I may lose. Right. And then what do I have to manifest away? I can't do anything about it. Right? I mean, I could try. So if you lose on your initial argument, you'll lose on manifest way, will you not, because of the opinions in the record? I think my manifest way argument is incredibly strong. And I detail it all. You think it's strong? I think it's incredibly strong in this case. So I detail it all. In fact, I don't know if you guys had a chance to look at the video I gave you. But my client is tumbling down the stairs on the video. And the arbitrator thought, after making this effort of credibility finding, you lose on accident counsel. She tumbles down the stairs. I have an immediate accident report saying I tumbled down the stairs with injuries reported. She goes right to the emergency room by virtue of the supervisor taking her and burning her back. She's limping. She's got complaints in the groin area, exactly where they had to be, where the hip expert eventually said, what do you need treatment? We've got an MRI out there. I'm finding labral tears on both sides. How could anyone under the sun lose an accident report? Counsel on the other side said, well, she applied a neutral risk factor to nail you on accident. And I would submit to you, these stairs that she was coming down have those patterns, the metal patterns pressed down. That's not a neutral risk case. It's inside a control area in the factory. She's wearing boots because it's cold. She works over by the delivery doors and the toilet. So that's not a neutral risk case. And you have my response about the neutral risk gentleman, which I'd be happy to go on to if you really want to hear it. I mean, I've heard it before. So my point today is I have a specific statutory provision. I have Supreme Court case law saying that it's got to be based on a fully settled record. I have Supreme Court's case law saying it's a due process violation, a Tulsa v. Holtzman case. And for centuries, common law practice, which have been refined over the centuries, saying don't use out-of-court evidence. So it should be reversible as a matter of law just by virtue of that finding. I'd ask that you amend that to the commission so I can get a fair shake of this if I lose. And that's the way it is. Thank you. Counsel, thank you. Your response? Please, the Court. John Makarovsky on behalf of Genoa Banking. With respect to counsel's argument that there was out-of-court evidence considered, that's simply not the case here. This case was initially set for trial on November 24, 2015, before arbitrator Harry. Petitioner's counsel was there. I was present. Petitioner was present. The arbitrator requested a pretrial. Petitioner was there using a cane. The reason why I say it was not out-of-court evidence, because when this case did go to hearing, on page C181 of the record, I specifically asked the petitioner, when you were last informed of commission here on November 24, 2015, you came with a cane at that time. Correct. Yes. Now, what the arbitrator was doing was contrasting petitioner's use of the cane when she went to the doctor's appointments with seven different days of video evidence where she was ambulating with no cane, and then comparing video evidence five days before, on November 19, 2015, that shows her again ambulating without a cane, getting into the back seat of her SUV, twisting and turning, a whole litany. This was just one factor, but it was not out-of-court evidence because she admits she was present with a cane on November 24. You're saying which is what the arbitrator said? Yes. I want to be very, very clear. When we look at the record, the arbitrator put a phrase in the decision, Petitioner appeared at the hearing utilizing a cane, meaning the hearing of November 24, 2015. Correct. And during the course of the hearing on this case, you asked the petitioner whether the petitioner appeared on November 24, 2015, using a cane, and the petitioner said yes. Correct. Okay. So the statement, petitioner appeared at the hearing utilizing a cane, is not necessarily the observation of the arbitrator. It is evidence based upon the claimant's admission. Absolutely, Your Honor. And we'll find that in the record on what page? Page C181. Okay. So that takes care of it. Now we go to the other testimony. I don't know if they'll agree, but we'll decide it. But let me ask you this. There's conflicting evidence on both sides. I mean, each side has some evidence in their favor. But what about his argument that the arbitrator, as adopted by the commission, found there was no accident? And he says the video clearly shows her falling down stairs. Okay. Well, there was much testimony about that, and the commission, for a litany of reasons, inconsistencies noted by emergency room doctors, doctors that examined her where she complained of difficulty, but then was able to get up without difficulty. The observers were walking in a normal fashion. Numbers of inconsistencies which were detailed in the arbitration decision. That would go with how she responded, how she got up. I mean, the tape must show her falling. Yes, it does. So here's what the tape shows. And the arbitrator also goes on to this. And I argue that what this is is a neutral risk because, admittedly, she was not carrying the object. She did not testify. She wasn't up and down the stairs all day long, no qualitative or quantitative? No, it's one time that she went down these stairs, used the restroom. So she's in the course of personal comfort. The question is arising out. So the commission, the arbitrator, were free to rely upon the testimony of Ms. Marcucci, who saw this tape in slow motion on March 1st and March 2nd. And what Ms. Marcucci stated, she saw the plaintiff come down these two steps, reach the cement level, and then trip, as if you tripped on anti-shoelaces, because she went forward. And then the video shows the plaintiff bending down and making a high motion and then getting up quickly and moving up. So her testimony, the arbitrator looked at the video in detail. The plaintiff testified that her right foot caught on the last step and her left leg went forward with her knees striking the cement. The arbitrator indicated she looked at the video numerous times and at no time did it show the plaintiff's right foot sticking on the last step. And then there's also inconsistencies. When she went and received treatment, she stated it may have been a couple steps. When she saw the I.D. doctor, she stated two or three steps. So transversing stairs or falling on anti-shoeless laces is considered a neutral risk. The other inconsistency, which is noted, is the plaintiff testified she was wearing boots. But she admitted she never changed her shoes from the time she went to the emergency room and came back to the plant. And the respondents with this testified that she was wearing gym shoes with laces and not boots. So the arbitrator and the commissioners, because counsel brought this case up before the panel, and they looked at the video, too, and they disagreed with the fall being caused by a defect in the stairs. They believed, consistent, that she had reached the landing and fallen. So it was a neutral risk. The respondent testified that the stairs were inspected. There was no defect. They were not raised. So the arbitrator and the commission were free, based upon the evidence and lack of credibility, to reach that conclusion. Beyond the accident issue, we go to the notice issue. She denied any fire, back pain, or pain in her groin area. She had pain in her back in 2013. In one month prior, January 28, 2015, she had pain in the supracubic region bilaterally, or lower quadrants, and had a pelvic ultrasound done on February 14. And our expert, who is the only doctor in this case who reviewed all records, Dr. Donnelly examined her on one occasion, only looked at Dr. Lorenz's bill for the MRI, testified that that was comparable with a labral tear. Also, the labral tears, the percentage are insidious and onset, 74%, and many individuals have labral tears who could be completely asymptomatic. And our expert reviewed all the video, indicated that the erectograms, which nobody could date the age of, could have been preexistent and not even caused. So the commission also was free to pick and choose whatever medical opinion they decided to rely upon, and they relied upon and adopted Dr. Suchi's. So, therefore, there was no on-the-court evidence, because it's in the record of C181. She admitted coming when it came on November 24. And the arbitrators just contrasted the video evidence, which was in the record of November 19, again showing her without a cane, as a litany of reasons why she was not credible. The arbitrator didn't believe her. The commission didn't believe her. The decision was correct. There was no accident arising out of it. And also, there's no causation, and the commission was free to pick that expert. I would request that the commission decision be approved. Rebuttal? The threshold question, again, is whether or not violation of a statutory provision, which controls the setting, is enough to throw out the decision, which it has to be. But you didn't. It wasn't nice not to tell us about what was on page C181. Well, let me tell you what's on C181. Tell me what's there. It's on C181, actually. C181. Okay. When you were asking for the commission, you came with a cane at that time. Yes. There's nothing beyond that. There's nothing about her utilizing a cane. The utilization, what she did with the cane, is a conclusion that had to be drawn only by the arbitrator, because the petitioner said nothing about utilizing a cane. So here's the problem with the arbitrator's ruling. Here's what we've done in the out-of-court evidence and in the rulings. We have no idea what she was doing utilizing this cane during that date, before trial, that so triggered the arbitrator to find against her own credibility on that point. Because she used the out-of-court evidence, didn't disclose to us she was using the out-of-court evidence. Wait a minute. What makes you think that the phrase in this decision that says merely, petitioner appeared at the hearing utilizing a cane, is the commissioner's writing of what they observed, as opposed to their interpretation of what that answer meant? I don't know. You're giving them the assumption that utilizing a cane, using some item, does not mean use some item. We give them the assumption that they only rely upon appropriate evidence in rendering their decision. Now, if she interpreted that testimony to mean that the petitioner utilized the cane as opposed to merely carrying it for an ornament, then that may be, that may not be. It may not be a good interpretation. What you want is to ascribe a nefarious interpretation, that the commissioner was referring to what the commissioner or the arbitrator actually saw. What I want you to do is I want you to take the out-of-court evidence out of the case. She brought a cane. She didn't say anything about utilizing a cane. If we take the utilizing the cane evidence out of the case, you've got a real problem with Dr. Shuey. And you've got a real problem because he says he personally observed her walk across the parking lot and it was inconsistent with her complaints of pain. Before I address that, I've got a great response to that. The utilizing the cane, let's say we take it out. There is no de minimis error, excuse, or exception to 1.18. It says you can't use this stuff. They used it. It's automatically violated. That means we adopt your interpretation of the phrase. Sure. So it has to be thrown out. It's got to be sent back down. We don't have to adopt your interpretation. We can determine that the arbitrator was merely interpreting what that testimony meant. Right or wrong, that's what she interpreted. What we don't know is she didn't identify what my client was utilizing it. She doesn't have to. She does. No, she doesn't. If she relied on something she saw on the 24th, you might have an arguable point. If she is merely interpreting what that testimony means, you have no running issue. There is no evidence in the record in the transcript of proceedings of my client utilizing the cane six months before trial. Let's get to the causation issue. What are you going to do with Dr. Suchi? Dr. Suchi is the farthest thing from an expert that you're going to find at the commission. More importantly, though, because they parked their surveillance person outside his office. You can see my client walk into the building. You can see my client limp in a big way coming out of that building. Dr. Suchi is not credible under anyone's interpretation because he plays this. I don't know if you've seen it before. I always say I watch the person when they're walking from my office. They look great. They assume their normal walk, which they didn't have during the examination in my office. We've got it on videotape this time. She walks in. She's walking in slow, a little bit limping. She comes out. She's limping markedly. It's a false claim that Dr. Suchi made, and it's on video that I provided to you guys, so you can actually look at it. You can see with your own eyes. This nonsense about tying shoe laces and stuff, I gave you the videotape so you can see. You can't see any of that stuff. The contemporaneous act of reporting, my right foot caught up on the stair track. I hit my left knee. She goes to the doctor. The emergency room. She goes to the doctor. Her left knee is injured. Her right knee is, yes. It's got a number two. The case is reversible. Yes, I may lose another man, but 1.1E has to mean something. And utilization can't mean did you win the game. So, I pass this in reverse. Send it back. We'll be on the shelf. Thank you. Counsel is thank you. The matter will be taken under advisement. Court stands adjourned.